Allan E. Anderson (SBN 133672)
**ARENTFOX SCHIFF LLP**
555 West Fifth Street, 48th Floor
Los Angeles, CA  90013-1065
Telephone:  213.629.7400
Facsimile:   213.629.7401
allan.anderson@afslaw.com

*Attorneys for Plaintiff S&F Management Company, LLC*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| S&F MANAGEMENT COMPANY, LLC,<br><br>    Plaintiff,<br><br>  v.<br><br>NEWGEN ADMINISTRATIVE SERVICES, LLC,<br><br>    Defendant. | Case No. 2:24-cv-2095<br><br>**COMPLAINT FOR:**<br><br>**(1) MISAPPROPRIATION OF TRADE SECRETS UNDER THE DEFEND TRADE SECRETS ACT OF 2016**<br><br>**(2) MISAPPROPRIATION OF TRADE SECRETS UNDER THE CALIFORNIA UNIFORM TRADE SECRETS ACT**<br><br>**(3) BREACH OF CONTRACT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff S&F Management Company, LLC ("S&F" or "Plaintiff"), by its attorneys, for its Complaint against NewGen Administrative Services, LLC "NewGen" or "Defendant"), states as follows:

## JURISDICTION AND VENUE

1.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff asserts claims for misappropriation of trade secrets under the Defend Trade Secrets Act, 18 U.S.C. § 1836, *et seq.* against Defendant. This Court has supplemental or pendant jurisdiction over Plaintiff's remaining claims, pursuant to 28 U.S.C. § 1367, because such claims are so related to Plaintiff's federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

2.      Venue is appropriate in this judicial district under 28 U.S.C. § 1391(b)(1) because Defendant is a limited liability company organized under the laws of the state of California. Venue also is appropriate in this judicial district under 28 U.S.C. § 1391(b)(2) because the events that gave rise to this Complaint occurred in this district.

## NATURE OF THE ACTION

3.      This action is brought by S&F to enjoin misappropriation of trade secrets and other confidential and proprietary information in violation of the: (a) federal Defend Trade Secrets Act; (b) California Uniform Trade Secrets Act; and (c) confidentiality provisions of that certain Letter Agreement Regarding Authorization of M-Theory Data Release (the "Hard Drive Confidentiality Agreement").  A true and correct copy of the Hard Drive Confidentiality Agreement is attached hereto as **EXHIBIT A**.

4.      Until on or around March 1, 2023, S&F provided administrative services to skilled nursing facilities known as the Windsor Entities (defined below).

5.      On or around March 1, 2023, NewGen replaced S&F as the administrative services provider for the Windsor Entities.

6.      On August 23, 2023, substantially all of the Windsor Entities were placed into voluntary chapter 11 bankruptcy proceedings jointly administered under Case No. 23-11200 (collectively, the "Chapter 11 Cases") in the United States Bankruptcy Court for the Central District of California (the "Bankruptcy Court").

7.      NewGen determined that on September 13, 2023, it sustained a data breach that affected information of 105,425 individuals (the "Data Breach"). On February 23, 2024, NewGen sent out letters notifying data breach victims of compromised information.

8.      On or around October 31, 2023, NewGen sought to reconstruct lost Data Breach records by using disaster recovery back-up tapes maintained by M-Theory Consulting Group, LLC ("M-Theory").

9.      M-Theory provided cloud infrastructure and data center services for the Windsor Entities.  In the event of data loss or breach, M-Theory was capable of providing data disaster recovery services.

10.      In November 2023, M-Theory provided NewGen with a hard drive (the "Hard Drive") containing approximately 15 terabytes of data reconstructed from disaster recovery tapes and a copy was furnished to S&F.  Due to the complexity and size of the data recovery, the recovered records are not necessarily in the same format or  order the data was maintained prior to the Data Breach.

11.      The Hard Drive contains (a) data belonging to the Windsor Entities, and (b) confidential data belonging to S&F.[1]

12.      Consequently, NewGen and S&F entered into the Hard Drive Confidentiality Agreement in order to protect the confidentiality interests of the parties. The Hard Drive Confidentiality Agreement governed the terms of M-Theory providing the Hard Drive to NewGen, and NewGen's use of the Hard Drive.

---

[1] The confidential S&F data includes S&F tax returns, business bank records, litigation data, quality assurance reports, proprietary strategic documents, policies, and procedures, and other highly confidential records.

13.    The Hard Drive Confidentiality Agreement (a) prohibited NewGen from disseminating confidential S&F data to third parties, and (b) obligated NewGen to segregate confidential S&F data before providing the Hard Drive to any third party. The Hard Drive contains confidential and trade secret information concerning S&F's business and legal affairs, operations, employee information, business strategies, policies and procedures, vendor contracts, operations manuals, and other proprietary and confidential matters.  The Hard Drive Confidentiality Agreement defines these highly sensitive records as the "S&F Confidential Information."

14.    On March 6, 2024, S&F became aware that NewGen had provided, or proposed to provide, the Hard Drive to the Windsor Entities, who in turn, have stipulated to turn the Hard Drive over to the Official Committee of Unsecured Creditors (the "Committee") appointed in the Windsor Entities' Chapter 11 Cases.

15.    On March 7, 2024, S&F asked NewGen to confirm that it is in compliance with its obligations under the Hard Drive Confidentiality Agreement and to explain the steps taken to segregate S&F Confidential Information.  NewGen has been contacted on two other occasions since March 7 but has not responded.

16.    The S&F Confidential Information is the proprietary trade secret and confidential information of S&F, which S&F has taken steps to keep private and confidential, including but not limited to the confidentiality and segregation provisions of the Hard Drive Confidentiality Agreement.

17.    Through this action, S&F seeks emergency injunctive relief directing NewGen to segregate and/or return the S&F Confidential Information and/or any of S&F's trade secret and other confidential and/or proprietary information, as well as preliminary and permanent injunctive relief preventing further acts of misappropriation of the S&F Confidential Information and ongoing breaches of the confidentiality and sharing provisions of Hard Drive Confidentiality Agreement.

1

**PARTIES**

2  18. S&F Management Company LLC is a California limited liability

3 company with its principal place of business at 1901 Avenue of the Stars, Suite 1060,

4 Los Angeles, CA 90067.

5  19. NewGen Administrative Services, LLC is a California limited liability

6 company with its principal place of business at c/o NewGen, LLC, 9526 W Pico

7 Blvd., Los Angeles, CA 90035 Attn: Aaron Robin and Daniel S. Klein.

8

**FACTS**

9

**The Sale and Bankruptcy Filings**

10  20. Until March 2023, S&F provided administrative and operational support

11 services to some or all of the following related entities. (i) S&F Home Health Opco

12 I, LLC; (ii) S&F Hospice Opco I, LLC; (iii) S&F Market Street Healthcare, LLC;

13 (iv) Windsor Care Center National City, Inc.; (v) Windsor Cheviot Hills, LLC; (vi)

14 Windsor Country Drive Care Center, LLC; (vii) Windsor Court Assisted Living,

15 LLC; (viii) Windsor Cypress Gardens Healthcare, LLC; (ix) Windsor El Camino

16 Care Center, LLC; (x) Windsor Elk Grove and Rehabilitation, LLC; (xi) Windsor

17 Elmhaven Care Center, LLC; (xii) Windsor Gardens Convalescent Hospital, Inc.;

18 (xiii) Windsor Hampton Care Center, LLC; (xiv) Windsor Hayward Estates, LLC;

19 (xv) Windsor Monterey Care Center, LLC; (xvi) Windsor Rosewood Care Center,

20 LLC; (xvii) Windsor Sacramento Estates, LLC; (xviii) Windsor Skyline Care Center,

21 LLC (xix) Windsor Terrace Healthcare, LLC; (xx) Windsor The Ridge Rehabilitation

22 Center, LLC; and (xxi) Windsor Vallejo Care Center, LLC; (collectively, the

23 "Windsor Entities").

24  21. In connection with providing its support services to the Windsor

25 Entities, S&F entered into a Master Services Agreement with M-Theory dated

26 August 26, 2020.

27

28

22.     On or around March 1, 2023, NewGen replaced S&F and began providing the Windsor Entities with the operational and administrative support services previously provided by S&F.

23.     On or around February 28, 2023, S&F and NewGen entered into that certain Letter Agreement – Management of Facilities (the "<u>Interim Management Agreement</u>"), which provided for, among other things, NewGen's operation of the Windsor Entities until such a time as the sale of the Windsor Entities closed. .

24.     In furtherance of the Interim Management Agreement and the transition of operational services for the Windsor Entities to NewGen, S&F granted NewGen access to servers containing data of the Windsor Entities.

25.     On or around July 1, 2023, NewGen and/or its affiliates acquired ownership of the Windsor Entities pursuant to that certain Equity Interests Purchase Agreement dated as of March 20, 2023.  Though the Equity Interests Purchase Agreement was executed in March 2023, upon information and belief, the sale closed in July 2023.

26.     On August 23, 2023, all of the Windsor Entities except for Windsor Hayward Estates, LLC and Windsor Sacramento Estates, LLC filed petitions for relief under title 11 of chapter 11, United States Code in the Bankruptcy Court, initiating the Chapter 11 Cases.  Windsor Hayward Estates, LLC and Windsor Sacramento Estates, LLC subsequently also filed petitions under chapter 11 on September 29, 2023.

27.     On September 11, 2023, the Committee was appointed in the Chapter 11 Cases.

### The Data Breach and Hard Drive Confidentiality Agreement

28.     Upon information and belief, on or around September 13, 2023, the Windsor Entities were subjected to a ransomware cyberattack. The resulting Data

Breach affected NewGen's ability to access electronically-stored information on the servers.

29.    On October 31, 2023, NewGen's general counsel sent a letter to S&F concerning the Data Breach.  The letter stated in part:

> neither NewGen nor its affiliates have interest in your, S&F Management, or any other non-Windsor entity proprietary data or documents.  NewGen's sole interest is in obtaining data related to the Windsor entities only.  We will work with you to ensure that the data is properly segregated and that we do not share proprietary data or documents.  In a case where proprietary documents or data are inadvertently discovered, the discovering party shall immediately turn that data and/or documents to the other party and destroy any copy of said data and/or documents.

A true and correct copy of the October 31, 2023 letter is attached hereto as **EXHIBIT B**.

30.    On or around November 9, 2023, S&F and NewGen entered into the Hard Drive Confidentiality Agreement.

31.    Paragraph 1 of the Hard Drive Confidentiality Agreement provided as follows:

> As used herein, the term "<u>S&F Confidential Information</u>" shall mean all electronic information, notes, data, analyses, contracts, reports, compilations, agreements, studies, interpretations, other documents or files contained on the Hard Drive that relate to or involve S&F. The term "S&F Confidential Information" does not include information which (i) is or becomes generally available to the public other than as a result of disclosure by the NewGen or its Representatives (as such term is defined below), (ii) was within NewGen's or Representatives' possession prior to its being furnished to NewGen by or on behalf of S&F or through access to the Hard Drive, provided that the source of such information was not known

by NewGen to be bound by a confidentiality agreement with or other contractual, legal or fiduciary obligation of confidentiality to S&F or any other party with respect to such information, (iii) becomes available to NewGen or its Representatives on a non-confidential basis from a source other than S&F or any of its Representatives, or from the Hard Drive, provided that NewGen does not have notice that such source is bound by a confidentiality agreement with or other contractual, legal or fiduciary obligation of confidentiality to S&F or any other party with respect to such information or (iv) was independently developed by NewGen or its Representatives without using any information contained on the Hard Drive.

32.   Paragraph 2 of the Hard Drive Confidentiality Agreement provided as follows:

S&F hereby agrees to authorize M-Theory to provide the Hard Drive to NewGen, subject to the following terms and conditions:

(a)   NewGen and its directors, officers, shareholders, partners, members, managers, employees, agents or attorneys (collectively, "Representatives") shall only use that portion of the S&F Confidential Information that relates to the [Windsor Entities acquired by NewGen and/or its affiliates from S&F and/or its affiliates pursuant to that certain Equity Interests Purchase Agreement, dated March 20, 2023, as amended] (the "Windsor Data"). NewGen shall further ensure that the S&F Confidential Information is properly segregated, such that NewGen and its Representatives do not use, view or share any the S&F Confidential Information. In a case where proprietary documents or data other than the Windsor Data are inadvertently discovered, NewGen shall immediately return such data and/or documents to S&F and destroy any copy of said data and/or documents.

(b) NewGen shall keep all of the S&F Confidential Information confidential and without the prior written consent of S&F, NewGen and its Representatives will not disclose any of the S&F Confidential Information in any manner other than as expressly permitted by this Agreement. In any event, NewGen shall be responsible for any breach of this Agreement by any of its Representatives.

(c) NewGen further covenants and agrees that it shall not use any of the S&F Confidential Information in any way directly or indirectly adverse to S&F, Lee Samson, their respective affiliates and/or their respective Representatives.

33.    Paragraph 4 of the Hard Drive Confidentiality Agreement provided as follows:

It is further understood and agreed that money damages would not be a sufficient remedy for any breach of this Agreement by a party or any of its Representatives and that the other party shall be entitled to equitable relief, including injunction and specific performance. Such remedies shall not be deemed to be the exclusive remedies for a breach by a party of this Agreement but shall be in addition to all other remedies available at law or equity. In the event of litigation to enforce any provision hereof, the prevailing party will be entitled to recover all costs, including its reasonable attorneys' fees and costs, incurred in connection with the litigation.

34.    On or around November 21, 2023, S&F and M-Theory entered into an Authorization & Security Waiver Transfer of Customer Data to Third Party, which authorized the transfer of the Hard Drive from M-Theory to NewGen pursuant to the terms of the Hard Drive Confidentiality Agreement.

35.    Among other things, the Hard Drive contains S&F's confidential, proprietary, and trade secret information, including, for example, its pricing

1    information, rate sheets, quotes, bid and proposal costs, applicant and employee

2    hiring strategies, competitive intelligence, and contracts.

3                              **The Hard Drive Stipulation**

4          36.     On March 3, 2024, the Windsor Entities filed a *Stipulation Between*

5    *Debtors and Official Committee of Unsecured Creditors RE Protocol Regarding*

6    *Production of Hard Drive to and Use of Any Materials By the Official Committee of*

7    *Unsecured Creditors* [Docket No. 668] (the "<u>Hard Drive Stipulation</u>") in the Chapter

8    11 Cases. A true and correct copy of the Hard Drive Stipulation is attached hereto

9    as **EXHIBIT C**.

10         37.     The Hard Drive Stipulation's recitals provided that "the Debtors have

11    recovered certain of the Debtors' records which have been replicated on the Hard

12    Drive which the Committee and Province seek to review for the Committee's

13    potential use in the Debtors' Bankruptcy Cases," "the Materials on the Hard Drive

14    are voluminous and not easily accessed by subject matter or content, and presently

15    can only be reviewed in person at the Debtors' Offices on one of the Debtors'

16    computers set up for this purpose," and that "the Debtors have agreed to provide the

17    Committee with a copy of the Hard Drive," subject to the terms of the Hard Drive

18    Stipulation.

19         38.     The Hard Drive Stipulation provided that "[t]he Debtors will provide

20    the Committee through its counsel of record a copy of the Hard Drive within five (5)

21    days of entry of an Order approving this Stipulation."

22         39.     Upon information and belief, the Hard Drive referenced in the Hard

23    Drive Stipulation is the same Hard Drive subject to the Hard Drive Confidentiality

24    Agreement.

25         40.     Upon information and belief, the Hard Drive referenced in the Hard

26    Drive Stipulation contains the S&F Confidential Information, which S&F

27    Confidential Information is subject to and protected by the terms of the Hard Drive

28    Confidentiality Agreement.

41.     The Committee had knowledge of the existence of the Hard Drive Confidentiality Agreement because a copy of the agreement was provided to the Committee by S&F on or around January 30, 2024.

42.     On March 6, 2024, S&F filed an *Objection and Reservation of Rights* [Docket No. 677] to the Hard Drive Stipulation, which attached the Hard Drive Confidentiality Agreement as Exhibit A thereto and stated that S&F did not consent or authorize any S&F Confidential Information being provided to any third party, including but not limited to the Committee.

43.     On or around March 7, 2024, counsel to S&F sent a letter to NewGen's counsel notifying it of the Hard Drive Stipulation and S&F's objection thereto, stating S&F did not consent to the release of any S&F Confidential Information, and that NewGen remained responsible for segregating S&F Confidential Information pursuant to the terms of the Hard Drive Confidentiality Agreement.  A true and correct copy of the March 7, 2024 letter is attached hereto as **EXHIBIT D**.

## The Importance of the S&F Confidential Information

44.     The S&F Confidential Information contains confidential pricing information, customer lists, vendor information, accounting and bank account information, S&F tax returns, proprietary documents such as policies and procedures, workflows, automation workflows, governing body minutes, emergency operations manuals, facility operations manuals, marketing and bonus plans, employee hiring, training, and development materials, litigation materials, and other internal business and control information with respect to S&F's business and management models. The information contained in these documents is not available to the public and not generally known in the managed care industry. S&F expended significant effort and expenses in developing and compiling the information contained in these and related documents in the S&F Confidential Information and in maintaining their confidentiality and secrecy, including by requiring the confidentiality and segregation provisions of the Hard Drive Confidentiality Agreement.  NewGen

would not have otherwise had access to any of the S&F Confidential Information other than through the Hard Drive.

45.    The value of S&F's confidential, proprietary and trade secret information is in its exclusive use by S&F. This information is one of S&F's most valuable assets.

46.    This trade secret information, which S&F developed over a period of many years and at considerable expense, related not only to specific client contracts and prospective client proposals, but also to S&F's overall competitive strategies, finances, recruiting efforts, operations strategies, and key customer contacts and other information.  The information represents S&F's highly proprietary data, long-formed institutional memory and outlines its strengths and strategies for operation and administration within the industry.

47.    There is no legitimate reason for any third party, including the Committee, to have access to S&F Confidential Information. The S&F Confidential Information is proprietary information regarding S&F's competitive strategies, finances, margins and costs, and does not pertain to the Windsor Entities or their bankruptcy filings.   The only purpose in providing such S&F Confidential Information to any third party could be to use such information against S&F and/or its affiliates.

48.    The Hard Drive Confidentiality Agreement specifically requires NewGen to segregate any S&F Confidential Information from any Windsor Entity information and keep such S&F Confidential Information confidential prior to providing the Hard Drive (or any copy thereof) to any third party.

49.    The Hard Drive Confidentiality Agreement further provides that NewGen "shall not use any of the S&F Confidential Information in any way directly or indirectly adverse to S&F" or its affiliates.

50.    Under these circumstances, the only reasonable conclusion is that NewGen intended to misappropriate S&F's confidential, proprietary, and trade secret

information and to use this information in a way directly or indirectly adverse to S&F and/or its affiliates. Upon information and belief, the Committee intends to use the S&F Confidential Information to attempt to exert leverage against S&F and/or its affiliates, and/or to otherwise fish for potential causes of action against S&F and/or its affiliates.

51.    As a result of NewGen's misappropriation of S&F's confidential, proprietary, and trade secret information, S&F has suffered and will continue to suffer irreparable harm, including but not limited to the loss of customer and counterparty confidence, goodwill, and the confidential nature of its proprietary and trade secret information which cannot be regained once disclosed.

52.    As a result of NewGen's misappropriation of S&F's confidential, proprietary, and trade secret information, S&F has suffered and will continue to suffer significant damages.

53.    If the Court does not enjoin NewGen's continued misappropriation and use of its confidential, proprietary, and trade secret information, including but not limited to providing such information to the Committee through the Hard Drive Stipulation, then such information will be wrongfully disclosed to third parties and there is no way to undo such wrongful disclosure or the consequences thereof.

54.    Because of the critical nature of the information NewGen misappropriated, NewGen's actions have the potential to damage S&F's overall business and reputation permanently and irreparably.

55.    S&F is entitled to preliminary and permanent injunctive relief enjoining NewGen and any other party with S&F Confidential Information from, among other things, continuing to use and/or disclose S&F's confidential, proprietary and trade secret information.

///

///

## CAUSES OF ACTION

### Count I – Misappropriation of Trade Secrets

### Under the Defend Trade Secrets Act of 2016

56.     S&F realleges and incorporates by reference all preceding paragraphs as if fully alleged herein.

57.     NewGen transferred, without authorization, S&F's trade secret information, including the S&F Confidential Information contained on the Hard Drive.

58.     On information and belief, NewGen has provided or allowed to be provided the S&F Confidential Information to third parties, including but not limited to the Committee, and unless enjoined, NewGen and/or such third parties will continue to wrongfully use and access the S&F Confidential Information.

59.     S&F compiled the S&F Confidential Information over many years and at great expense.

60.     S&F at all times kept the S&F Confidential Information confidential, and took reasonable steps to preserve its secrecy, including, but not limited to, requiring NewGen to execute the Hard Drive Confidentiality Agreement.

61.     The S&F Confidential Information is secret.  It is not generally known or available to the public or S&F's competitors, and it is not readily ascertainable by other means.

62.     The S&F Confidential Information pertains only to S&F's business strategies, financing, customer and vendor lists, business strategies and other proprietary information and does not relate to or arise from S&F's operation and administration of the Windsor Entities.

63.     The sole purpose of NewGen wrongfully accessing and/or wrongfully providing third parties with access to the S&F Confidential Information is to use such S&F Confidential Information against S&F and/or its affiliates, in contravention of the Hard Drive Confidentiality Agreement.

64.    The S&F Confidential Information is a "trade secret" under the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1831, *et seq*. (the "DTSA").

65.    NewGen acquired knowledge of certain of the S&F Confidential Information pursuant to the Hard Drive Confidentiality Agreement, and thus owed and continues to owe S&F a duty to maintain the secrecy of such information, including but not limited to the duty to segregate any S&F Confidential Information prior to providing the Hard Drive to any third party.

66.    NewGen continues to wrongfully provide the S&F Confidential Information to third parties, including but not limited to providing the Hard Drive to the Committee through the Hard Drive Stipulation.

67.    NewGen's actions violate the Defend Trade Secrets Act.

68.    NewGen's actions in transferring and misappropriating the S&F Confidential Information were willful, wanton, and malicious, and were taken with reckless disregard for S&F's rights.

69.    NewGen's actions have caused and will continue to cause S&F irreparable harm if not preliminarily and permanently enjoined.

70.    S&F suffers irreparable harm from NewGen's actions, including potential loss of business, reputation, goodwill and trade secrets, all of which cannot be compensated by money damages.

71.    S&F has no adequate remedy at law because NewGen's actions are affecting S&F's goodwill, reputation, and ability to safeguard its proprietary confidential information.

## Count II – Misappropriation of Trade Secrets
## Under the California Uniform Trade Secrets Act

72.    S&F realleges and incorporates by reference all preceding paragraphs as if fully alleged herein.

73.    As set forth above, NewGen transferred S&F Confidential Information to third parties, including but not limited to the Committee.

74.     The S&F Confidential Information includes "trade secrets" under the California Uniform Trade Secrets Act, Section 3426, *et seq*., of the California Civil Code, as amended (the "California Uniform Trade Secrets Act").

75.     NewGen acquired knowledge of certain of the S&F Confidential Information pursuant to the Hard Drive Confidentiality Agreement, and thus owed and continues to owe S&F a duty to maintain the secrecy of such information, including but not limited to the duty to segregate any S&F Confidential Information prior to providing the Hard Drive to any third party.

76.     NewGen continues to provide the S&F Confidential Information, including but not limited to providing the Hard Drive to the Committee through the Hard Drive Stipulation.

77.     NewGen's actions violate the California Uniform Trade Secrets Act.

78.     NewGen's actions in transferring and misappropriating the S&F Confidential Information were willful, wanton, and malicious, and were taken with reckless disregard for S&F's rights.

79.     NewGen's actions have caused and will continue to cause S&F irreparable harm if not preliminarily and permanently enjoined.

80.     S&F suffers irreparable harm from NewGen's actions, including potential loss of business, reputation, goodwill and trade secrets, all of which cannot be compensated by money damages.

81.     S&F has no adequate remedy at law because NewGen's actions are affecting S&F's goodwill, reputation, and ability to safeguard its proprietary confidential information.

### **Count III – Breach of Contract**

82.     S&F realleges and incorporates by reference all preceding paragraphs as if fully alleged herein.

83.     The Hard Drive Confidentiality Agreement constitutes a contract between S&F and NewGen.

84. In consideration of being provided access to the information contained on the Hard Drive, NewGen agreed to be bound by the terms and conditions set forth in the Hard Drive Confidentiality Agreement

85. As a condition of the Hard Drive Confidentiality Agreement, among other things, NewGen agreed that it would not disseminate any S&F Confidential Information to any third parties.

86. As a condition of the Hard Drive Confidentiality Agreement, among other things, NewGen agreed that it would segregate any S&F Confidential Information prior to providing the Hard Drive (or any copy thereof) to any third party.

87. As a condition of the Hard Drive Confidentiality Agreement, among other things, NewGen agreed that it would not use any of the S&F Confidential Information in any way directly or indirectly adverse to S&F or its affiliates.

88. The Hard Drive Confidentiality Agreement was supported by fair and adequate consideration and constitutes binding and enforceable obligations.

89. The Hard Drive Confidentiality Agreement was necessary to protect S&F's legitimate business interests, does not impose an undue hardship on NewGen, and is not against the public interest.

90. By virtue of NewGen's conduct, including the misappropriation of S&F Confidential Information and providing S&F Confidential Information to third parties, including but not limited to the Committee, NewGen has breached, and continues to breach, the Hard Drive Confidentiality Agreement.

91. As a direct and proximate result of NewGen's conduct, S&F has suffered damages in an amount to be determined at trial.

92. As a direct and proximate result of NewGen's conduct, NewGen has caused, and will continue to cause irreparable harm to S&F, its affiliates, and their legitimate business interests. The harm caused by NewGen is continuing and cannot be compensated by monetary damages alone, subjects S&F to immediate and irreparable harm, and thus, S&F is entitled to injunctive relief, including a temporary

restraining order and preliminary injunction, enjoining NewGen from providing any S&F Confidential Information to any third party.

93.    The Hard Drive Confidentiality Agreement further provides that in the event of litigation to enforce any provision thereof, the prevailing party will be entitled to recover all costs, including its reasonable attorneys' fees and costs, incurred in connection with the litigation.  S&F is therefore entitled to its fees and costs in connection with this action, in addition to any monetary damages to be proved at trial as a result of NewGen's violations of the Hard Drive Confidentiality Agreement.

## **REQUEST FOR INJUNCTIVE RELIEF**

94.    S&F realleges and incorporates herein by reference all preceding paragraphs as if fully alleged herein.

95.    Unless NewGen is enjoined from engaging in additional misconduct, including but not limited to providing the Hard Drive and/or any S&F Confidential Information to third parties, including but not limited to the Committee, S&F will be irreparably harmed in the marketplace by having its confidential, proprietary, trade secret information improperly, unlawfully, and competitively used against it and/or its affiliates and by loss of customer goodwill.

96.    S&F has no adequate remedy at law for NewGen's misconduct, as money damages alone are not adequate to compensate for the ongoing harm caused by NewGen's misconduct.

97.    S&F has a clear legal right to the requested relief, and the balance of equities weighs heavily in S&F's favor.

98.    The public interest favors entry of an injunction to protect the legitimate business interests of parties who have substantial relationships with customers.

///

///

///

# PRAYER FOR RELIEF

WHEREFORE, S&F seeks the following relief:

99.   An Order:

A.   Prohibiting NewGen from accessing, using, copying, disclosing, altering, destroying or deleting any trade secrets, proprietary and/or confidential information belonging to S&F, including any information (whether in electronic form or hard copy) taken without authorization from S&F's and/or M-Theory's databases without permission, and prohibiting any access to or dissemination of the Hard Drive until NewGen has, at its own cost and expense, segregated and removed all S&F Confidential Information therefrom, until further order of this Court;

B.   Requiring NewGen, within 48 hours of the entry of this Order, to file with this Court and serve upon S&F's counsel a sworn statement, under penalty of perjury, identifying all persons to whom NewGen has disclosed S&F Confidential Information, including but not limited to in the form of the Hard Drive (and any copy thereof);

C.   Requiring NewGen to pay S&F any damages in an amount to be determined as a result of NewGen's breach of the Hard Drive Confidentiality Agreement;

D.   Requiring NewGen to pay S&F its costs and attorneys' fees for bringing this lawsuit; and

E.   Such other and further relief as this Court may find just and proper under the law.

Dated: March 14, 2024

**ARENTFOX SCHIFF LLP**

By: _____
ALLAN E. ANDERSON
Attorneys for Plaintiff
S&F Management Company, LLC

1

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a jury trial on all causes of action triable by jury in the above complaint.

Dated: March 14, 2024                    **ARENTFOX SCHIFF LLP**

By: _____
     ALLAN E. ANDERSON
     Attorneys for Plaintiff
     S&F Management Company, LLC