Allan E. Anderson (SBN 133672)
**ARENTFOX SCHIFF LLP**
555 West Fifth Street, 48th Floor
Los Angeles, CA  90013-1065
Telephone:  213.629.7400
Facsimile:   213.629.7401
allan.anderson@afslaw.com

*Attorneys for Plaintiff S&F Management Company, LLC*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| S&F MANAGEMENT COMPANY, LLC,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>NEWGEN ADMINISTRATIVE SERVICES, LLC,<br><br>　　　　　Defendant. | Case No. 2:24-cv-2095<br><br>**DECLARATION OF BRAD GIBSON IN SUPPORT OF PLAINTIFF'S *EX PARTE* APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY PRELIMINARY INJUNCTION SHOULD NOT ISSUE**<br><br>[Filed concurrently with *Ex Parte* Application; Memorandum of Points and Authorities; Declaration of Allan E. Anderson; and [Proposed] Order]<br><br>Action Filed: March 14, 2024 |

# DECLARATION OF BRAD GIBSON

I, Brad Gibson, declare pursuant to 28 U.S.C. § 1746:

1. I am the owner of Infinium Healthcare, Inc. I have been retained as a consultant to Plaintiff S&F Management Company, LLC ("S&F"). I submit this Declaration pursuant to Fed. R. Civ. P. 65(b) in support of S&Fs *Ex Parte* Application for a Temporary Restraining Order and Order to Show Cause Why a Preliminary Injunction Should Not Issue against Defendant NewGen Administrative Services, LLC ("NewGen" or "Defendant").

2. S&F brought this action to enjoin misappropriation of trade secrets and other confidential and proprietary information in violation of the: (a) federal Defend Trade Secrets Act; (b) California Uniform Trade Secrets Act; and (c) confidentiality provisions of that certain Letter Agreement Regarding Authorization of M-Theory Data Release (the "Hard Drive Confidentiality Agreement"). A true and correct copy of the Hard Drive Confidentiality Agreement is attached hereto as **EXHIBIT A**.

3. As a result of NewGen's misappropriation of S&F's confidential, proprietary, and trade secret information, S&F has suffered and will continue to suffer irreparable harm, including but not limited to the loss of customer and counterparty confidence, goodwill, and the confidential nature of its proprietary and trade secret information which cannot be regained once disclosed.

## The Sale and Bankruptcy Filings

4. S&F is a California limited liability company. Until March 2023, S&F provided administrative and operational support services to some or all of the following related entities. (i) S&F Home Health Opco I, LLC; (ii) S&F Hospice Opco I, LLC; (iii) S&F Market Street Healthcare, LLC; (iv) Windsor Care Center National City, Inc.; (v) Windsor Cheviot Hills, LLC; (vi) Windsor Country Drive Care Center, LLC; (vii) Windsor Court Assisted Living, LLC; (viii) Windsor Cypress Gardens Healthcare, LLC; (ix) Windsor El Camino Care Center, LLC; (x)

Windsor Elk Grove and Rehabilitation, LLC; (xi) Windsor Elmhaven Care Center, LLC; (xii) Windsor Gardens Convalescent Hospital, Inc.; (xiii) Windsor Hampton Care Center, LLC; (xiv) Windsor Hayward Estates, LLC; (xv) Windsor Monterey Care Center, LLC; (xvi) Windsor Rosewood Care Center, LLC; (xvii) Windsor Sacramento Estates, LLC; (xviii) Windsor Skyline Care Center, LLC (xix) Windsor Terrace Healthcare, LLC; (xx) Windsor The Ridge Rehabilitation Center, LLC; and (xxi) Windsor Vallejo Care Center, LLC (collectively, the "Windsor Entities").

5. In connection with providing its support services to the Windsor Entities, S&F entered into a Master Services Agreement with M-Theory dated August 26, 2020.

6. On or around March 1, 2023, NewGen replaced S&F and began providing the Windsor Entities with the operational and administrative support services previously provided by S&F.

7. On or around February 28, 2023, S&F and NewGen entered into that certain Letter Agreement – Management of Facilities (the "Interim Management Agreement"), which provided for, among other things, NewGen's operation of the Windsor Entities until such a time as the sale of the Windsor Entities closed.

8. In furtherance of the Interim Management Agreement and the transition of operational services for the Windsor Entities to NewGen, S&F granted NewGen access to servers containing data of the Windsor Entities.

9. On or around July 1, 2023, NewGen and/or its affiliates acquired ownership of the Windsor Entities pursuant to that certain Equity Interests Purchase Agreement dated as of March 20, 2023. Though the Equity Interests Purchase Agreement was executed in March 2023, the sale closed in July 2023.

10. On August 23, 2023, all of the Windsor Entities except for Windsor Hayward Estates, LLC and Windsor Sacramento Estates, LLC filed voluntary petitions for chapter 11 relief under title 11 of the United States Code, initiating cases jointly administered under Case No. 23-11200 (collectively, the "Chapter 11

Cases") in the United States Bankruptcy Court for the Central District of California (the "Bankruptcy Court"). Windsor Hayward Estates, LLC and Windsor Sacramento Estates, LLC subsequently also filed petitions under chapter 11 on September 29, 2023.

11. On September 11, 2023, the Committee was appointed in the Chapter 11 Cases.

### The Data Breach and Hard Drive Confidentiality Agreement

12. On or around September 13, 2023, the Windsor Entities were subjected to a ransomware cyberattack. NewGen determined that it sustained a data breach that affected information of 105,425 individuals (the "Data Breach"). On February 23, 2024, NewGen sent out letters notifying data breach victims of compromised information.

13. The resulting Data Breach affected NewGen's ability to access electronically-stored information on the servers.

14. On October 31, 2023, NewGen's general counsel sent a letter to S&F concerning the Data Breach. The letter stated in part:

> neither NewGen nor its affiliates have interest in your, S&F Management, or any other non-Windsor entity proprietary data or documents. NewGen's sole interest is in obtaining data related to the Windsor entities only. We will work with you to ensure that the data is properly segregated and that we do not share proprietary data or documents. In a case where proprietary documents or data are inadvertently discovered, the discovering party shall immediately turn that data and/or documents to the other party and destroy any copy of said data and/or documents.

A true and correct copy of the October 31, 2023 letter is attached hereto as **EXHIBIT B**.

16. On or around October 31, 2023, NewGen sought to reconstruct lost Data Breach records by using disaster recovery back-up tapes maintained by M-Theory Consulting Group, LLC ("M-Theory").

17. M-Theory provided cloud infrastructure and data center services for the Windsor Entities. In the event of data loss or breach, M-Theory was capable of providing data disaster recovery services.

18. In November 2023, M-Theory provided NewGen with a hard drive (the "Hard Drive") containing approximately 15 terabytes of data reconstructed from disaster recovery tapes and a copy was furnished to S&F. Due to the complexity and size of the data recovery, the recovered records are not necessarily in the same format or order the data was maintained prior to the Data Breach.

19. The Hard Drive contains (a) data belonging to the Windsor Entities, and (b) confidential data belonging to S&F.[1]

20. On or around November 9, 2023, S&F and NewGen entered into the Hard Drive Confidentiality Agreement.

21. Paragraph 1 of the Hard Drive Confidentiality Agreement provided as follows:

> As used herein, the term "S&F Confidential Information" shall mean all electronic information, notes, data, analyses, contracts, reports, compilations, agreements, studies, interpretations, other documents or files contained on the Hard Drive that relate to or involve S&F. The term "S&F Confidential Information" does not include information which (i) is or becomes generally available to the public other than as a result of disclosure by the NewGen or its Representatives (as such term is defined below), (ii) was within NewGen's or its Representatives' possession prior to its being furnished to NewGen by or on behalf

---

[1] The confidential S&F data includes S&F tax returns, business bank records, litigation data, quality assurance reports, proprietary strategic documents, policies, and procedures, and other highly confidential records.

of S&F or through access to the Hard Drive, provided that the source of such information was not known by NewGen to be bound by a confidentiality agreement with or other contractual, legal or fiduciary obligation of confidentiality to S&F or any other party with respect to such information, (iii) becomes available to NewGen or its Representatives on a non-confidential basis from a source other than S&F or any of its Representatives, or from the Hard Drive, provided that NewGen does not have notice that such source is bound by a confidentiality agreement with or other contractual, legal or fiduciary obligation of confidentiality to S&F or any other party with respect to such information or (iv) was independently developed by NewGen or its Representatives without using any information contained on the Hard Drive.

22. Paragraph 2 of the Hard Drive Confidentiality Agreement provided as follows:

> S&F hereby agrees to authorize M-Theory to provide the Hard Drive to NewGen, subject to the following terms and conditions:
>
> (a) NewGen and its directors, officers, shareholders, partners, members, managers, employees, agents or attorneys (collectively, "Representatives") shall only use that portion of the S&F Confidential Information that relates to the [Windsor Entities acquired by NewGen and/or its affiliates from S&F and/or its affiliates pursuant to that certain Equity Interests Purchase Agreement, dated March 20, 2023, as amended] (the "Windsor Data"). NewGen shall further ensure that the S&F Confidential Information is properly segregated, such that NewGen and its Representatives do not use, view or share any the S&F Confidential Information. In a case where proprietary documents or data other than the

Windsor Data are inadvertently discovered, NewGen shall immediately return such data and/or documents to S&F and destroy any copy of said data and/or documents.

(b) NewGen shall keep all of the S&F Confidential Information confidential and without the prior written consent of S&F, NewGen and its Representatives will not disclose any of the S&F Confidential Information in any manner other than as expressly permitted by this Agreement. In any event, NewGen shall be responsible for any breach of this Agreement by any of its Representatives.

(c) NewGen further covenants and agrees that it shall not use any of the S&F Confidential Information in any way directly or indirectly adverse to S&F, Lee Samson, their respective affiliates and/or their respective Representatives.

23. Paragraph 4 of the Hard Drive Confidentiality Agreement provided as follows:

> It is further understood and agreed that money damages would not be a sufficient remedy for any breach of this Agreement by a party or any of its Representatives and that the other party shall be entitled to equitable relief, including injunction and specific performance. Such remedies shall not be deemed to be the exclusive remedies for a breach by a party of this Agreement but shall be in addition to all other remedies available at law or equity. In the event of litigation to enforce any provision hereof, the prevailing party will be entitled to recover all costs, including its reasonable attorneys' fees and costs, incurred in connection with the litigation.

24. On or around November 21, 2023, S&F and M-Theory entered into an Authorization & Security Waiver Transfer of Customer Data to Third Party, which

authorized the transfer of the Hard Drive from M-Theory to NewGen pursuant to the terms of the Hard Drive Confidentiality Agreement.

25. Among other things, the Hard Drive contains S&F's confidential, proprietary, and trade secret information, including, for example, its pricing information, rate sheets, quotes, bid and proposal costs, applicant and employee hiring strategies, competitive intelligence, and contracts.

### The Hard Drive Stipulation

26. On March 3, 2024, the Windsor Entities filed a *Stipulation Between Debtors and Official Committee of Unsecured Creditors RE Protocol Regarding Production of Hard Drive to and Use of Any Materials By the Official Committee of Unsecured Creditors* [Docket No. 668] (the "Hard Drive Stipulation") in the Chapter 11 Cases. A true and correct copy of the Hard Drive Stipulation is attached hereto as **EXHIBIT C**.

27. The Hard Drive Stipulation's recitals provided that "the Debtors have recovered certain of the Debtors' records which have been replicated on the Hard Drive which the Committee and Province seek to review for the Committee's potential use in the Debtors' Bankruptcy Cases," "the Materials on the Hard Drive are voluminous and not easily accessed by subject matter or content, and presently can only be reviewed in person at the Debtors' Offices on one of the Debtors' computers set up for this purpose," and that "the Debtors have agreed to provide the Committee with a copy of the Hard Drive," subject to the terms of the Hard Drive Stipulation.

28. The Hard Drive Stipulation provided that "[t]he Debtors will provide the Committee through its counsel of record a copy of the Hard Drive within five (5) days of entry of an Order approving this Stipulation."

29. It appears that the Hard Drive referenced in the Hard Drive Stipulation is the same Hard Drive subject to the Hard Drive Confidentiality Agreement.

30. The Hard Drive referenced in the Hard Drive Stipulation therefore contains the S&F Confidential Information, which S&F Confidential Information is subject to and protected by the terms of the Hard Drive Confidentiality Agreement.

31. The Committee had knowledge of the existence of the Hard Drive Confidentiality Agreement because a copy of the agreement was provided to the Committee by S&F on or around January 30, 2024.

32. On March 6, 2024, S&F filed an *Objection and Reservation of Rights* [Docket No. 677] to the Hard Drive Stipulation, which attached the Hard Drive Confidentiality Agreement as Exhibit A thereto and stated that S&F did not consent or authorize any S&F Confidential Information being provided to any third party, including but not limited to the Committee.

33. On or around March 7, 2024, counsel to S&F sent a letter to NewGen's counsel notifying it of the Hard Drive Stipulation and S&F's objection thereto, stating S&F did not consent to the release of any S&F Confidential Information, and that NewGen remained responsible for segregating S&F Confidential Information pursuant to the terms of the Hard Drive Confidentiality Agreement. A true and correct copy of the March 7, 2024 letter is attached hereto as **EXHIBIT D**.

### The Importance of the S&F Confidential Information

34. The S&F Confidential Information contains confidential pricing information, customer lists, vendor information, accounting and bank account information, S&F tax returns, proprietary documents such as policies and procedures, workflows, automation workflows, governing body minutes, emergency operations manuals, facility operations manuals, marketing and bonus plans, employee hiring, training, and development materials, litigation materials, and other internal business and control information with respect to S&F's business and management models. The information contained in these documents is not available to the public and not generally known in the managed care industry. S&F

expended significant effort and expenses in developing and compiling the information contained in these and related documents in the S&F Confidential Information and in maintaining their confidentiality and secrecy, including by requiring the confidentiality and segregation provisions of the Hard Drive Confidentiality Agreement. NewGen would not have otherwise had access to any of the S&F Confidential Information other than through the Hard Drive.

35. The value of S&F's confidential, proprietary and trade secret information is in its exclusive use by S&F. This information is one of S&F's most valuable assets.

36. This trade secret information, which S&F developed over a period of many years and at considerable expense, related not only to specific client contracts and prospective client proposals, but also to S&F's overall competitive strategies, finances, recruiting efforts, operations strategies, and key customer contacts and other information. The information represents S&F's highly proprietary data, long-formed institutional memory and outlines its strengths and strategies for operation and administration within the industry.

37. There is no legitimate reason for any third party, including the Committee, to have access to S&F Confidential Information. The S&F Confidential Information is proprietary information regarding S&F's competitive strategies, finances, margins and costs, and does not pertain to the Windsor Entities or their bankruptcy filings. The only purpose in providing such S&F Confidential Information to any third party could be to use such information against S&F and/or its affiliates.

38. The Hard Drive Confidentiality Agreement specifically requires NewGen to segregate any S&F Confidential Information from any Windsor Entity information and keep such S&F Confidential Information confidential prior to providing the Hard Drive (or any copy thereof) to any third party.

39. The Hard Drive Confidentiality Agreement further provides that NewGen "shall not use any of the S&F Confidential Information in any way directly or indirectly adverse to S&F" or its affiliates.

40. As a result of NewGen's misappropriation of S&F's confidential, proprietary, and trade secret information, S&F has suffered and will continue to suffer irreparable harm, including but not limited to the loss of customer and counterparty confidence, goodwill, and the confidential nature of its proprietary and trade secret information which cannot be regained once disclosed.

41. As a result of NewGen's misappropriation of S&F's confidential, proprietary, and trade secret information, S&F has suffered and will continue to suffer significant damages.

42. If the Court does not enjoin NewGen's continued misappropriation and use of its confidential, proprietary, and trade secret information, including but not limited to providing such information to the Committee through the Hard Drive Stipulation, then such information will be wrongfully disclosed to third parties and there is no way to undo such wrongful disclosure or the consequences thereof.

43. Because of the critical nature of the information NewGen misappropriated, NewGen's actions have the potential to damage S&F's overall business and reputation permanently and irreparably.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed in Los Angeles, California on:    March 14, 2024

/s/ *Brad Gibson*
Brad Gibson

# CERTIFICATE OF SERVICE

I, Katryn Smith, declare:

I am a citizen of the United States and employed in Los Angeles County, California. I am over the age of eighteen years and not a party to the within-entitled action. My business address is 555 West Fifth Street, 48th Floor, Los Angeles, California 90013.

On the date set forth below, according to ordinary business practice, I served the foregoing document(s) described as:

**DECLARATION OF BRAD GIBSON IN SUPPORT OF PLAINTIFF'S *EX PARTE* APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY PRELIMINARY INJUNCTION SHOULD NOT ISSUE**

☒ (BY PERSONAL SERVICE) On this date, I caused to be delivered by hand envelope(s) containing the document(s) to:

NewGen Administrative Services, LLC
Attn: Aaron Robin, Chief Executive Officer
9526 W. Pico Blvd.
Los Angeles, CA 90035

☒ (BY OVERNIGHT DELIVERY) On this date, I placed the documents in envelope(s) addressed to:

NewGen Administrative Services, LLC
Attn: Daniel Klein, General Counsel
9526 W. Pico Blvd.
Los Angeles, CA 90035

be delivered to an overnight delivery carrier, with delivery fees provided for, for next-business-day delivery to whom it is to be served.

Executed on March 15, 2024, at West Grove, California.

*/s/ Katryn Smith*